## COHN & ROSENBERGER *v.* UNITED STATES (No. 1387).[1]

IMITATION PEARL BEADS AND IMITATION PEARLS.

The provision in the tariff act of 1909 for imitation pearl beads is more specific than that for imitation pearls and the several provisions taken together indicate a legislative purpose to include within paragraph 449 of that act only such imitation pearls for use in the manufacture of jewelry as are not also imitation pearl beads. Lorsch & Co. *v.* United States (5 Ct. Cust. Appls., 93; T. D. 34132).

### United States Court of Customs Appeals, May 28, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7561 (T. D. 34415).

[Affirmed.]

*Hatch & Clute* (*Walter F. Welch* of counsel) for appellants.

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise covered by the present appeal consists of certain loose or loosely strung imitation pearl beads suitable and intended for use in the manufacture of jewelry. The collector assessed duty thereon at the rate of 35 per cent ad valorem under the provision for "imitation pearl beads" contained in paragraph 421 of the tariff act of 1909. The importers duly filed their protest against the assessment, claiming the articles to be dutiable at 20 per cent ad valorem under the provision for "imitation precious stones, including pearls and parts thereof, for use in the manufacture of jewelry" contained in paragraph 449 of the same act. The protest was submitted upon evidence to the Board of General Appraisers and was overruled, from which decision the importers now appeal.

At the hearing before the board the record in the case of Lorsch & Co. *v.* United States (5 Ct. Cust. Appls., 93; T. D. 34132) was incorporated into the present record, and the same is now before the court.

---

[1] Reported in T. D. 34533 (26 Treas. Dec., 949).

The following are the relevant parts of the two paragraphs which thus stand in competition with one another:

421. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, thirty-five per centum ad valorem; * * *.

449. * * * Imitation precious stones, including pearls and parts thereof, for use in the manufacture of jewelry, * * * twenty per centum ad valorem.

In comparing these two tariff provisions it should be noted that each contains an *eo nomine* enumeration, one being imitation pearl beads, the other being imitation pearls. It is true that not all imitation pearls are included within the latter classification, but only such as are for use in the manufacture of jewelry. It is equally true that not all imitation pearl beads are included within the prior classification, but only such as are loose or strung loosely on thread for facility in transportation only. In each case therefore the classification for duty contains a limitation engrafted upon the *eo nomine* enumeration; but these secondary limitations relate to certain incidents of the articles rather than to their characteristics, and furnish in this case no basis for a comparison in specificity. That comparison therefore depends upon the *eo nomine* designations of the respective articles, one of which is imitation pearls while the other is imitation pearl beads. It is needless to add that in this comparison "imitation pearls" is the genus and "imitation pearl beads" is the species.

The court therefore concludes that the provision for imitation pearl beads is more specific than that for imitation pearls, and that the several provisions taken together indicate a legislative purpose to include within paragraph 449 only such imitation pearls for use in the manufacture of jewelry as are not also imitation pearl beads. It appears from the record that imitation pearls are sometimes imported for use in the manufacture of jewelry in other forms than beads, and therefore the present construction does not deprive that provision of practical operation.

The present question is identical with that decided by this court in the Lorsch case, *supra*, and it is sufficient here to refer to that decision for a more complete exposition of the subject. The appellants seek to distinguish the two cases by suggesting that in the Lorsch case it was not proved that the imitation pearl beads were for use in the manufacture of jewelry. The record of that case, however, discloses that this claim was made by the importers and was sustained by testimony, and the decision of the court proceeded upon that theory. The language of the decision admits of no other construction than this, for if the articles in question had not been for use in the manufacture of jewelry there would have been no occasion for comparing the two classifications in point of specificity.

The case of United States v. American Bead Co. (3 Ct. Cust. Appls., 509; T. D. 33166) is cited by appellants' counsel as an authority in

support of their present claim. The following, however, is the description of the merchandise which appellants thus refer to:

Class 5, illustrated by importers' Nos. 5528, 5530, 5540, 5554, 5555, and 5557, consists of imitation precious stones, some oval and others in the form of hearts, the upper parts of which have a small shoulder pierced through in the process of molding, some imitation cameos with two holes pierced in the sides, and other articles not in the form of beads, some drilled and others without holes; all this class being suitable for use in the manufacture of jewelry and assessed for duty at 35 per cent ad valorem under paragraph 421 (p. 511).

Concerning these goods the court said:

The only items which have given us any doubt are some small pendants, the material of which is pierced and capable of being strung on thread or wire. These appear in various forms. And also some pear-shaped articles pierced lengthwise. Some of these articles might be used as beads, but the evidence shows that they were intended for use in the manufacture of jewelry. They are similar to the items considered in class 1, except that they have no attachment which admits of their being clasped to a necklace in their present form. They would appear to require some further process of manufacture. Giving the importer the benefit of any doubt there may be as to this classification, we affirm the decision of the board as to all items covered by classes 3 and 5 (p. 515).

It appears therefore from the foregoing description that the goods in question were not actually beads, although some of the articles might be used as beads, and that they were intended for use in the manufacture of jewelry. This case was of course before the court when the Lorsch case was decided and was not regarded as applicable to the point now in question.

The decision in the Lorsch case, *supra,* is approved, and in conformity therewith the decision of the board is *affirmed.*